CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 27, 2024
LAURA A. AUSTIN, CLERK
BY:      /s/T. Taylor
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ADIB EDDIE RAMEZ MAKDESSI,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23CV00051 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **DR. FOX, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Adib Eddie Ramez Makdessi, Pro Se Plaintiff; Debra M. Bryan, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA CRIMINAL JUSTICE AND PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendants Clarke, Robinson, Herrick, Kiser, White, King, Turner, Collins, and Dillman; Anthony S. Cottone, BYRNE CANAAN LAW, Richmond, Virginia, for Defendants Fox, Bledsoe, Trent, and Jessee (now known as Holbrook).*

The plaintiff, Adib Eddie Ramez Makdessi, a Virginia inmate proceeding pro se, filed an action under 42 U.S.C. § 1983. The Complaint in that case, Case No. 7:22CV00428, was asserted against 20 different defendants, and raised numerous misjoined claims based on events that had allegedly occurred over several years. An Amended Complaint continued the pattern of misjoinder. The court then ordered Makdessi to file a complaint that raised only properly joined claims. In his attempt to correct the misjoinder problem in a Second Amended Complaint, Makdessi included nine separate claims, purportedly joined by the pain he allegedly had suffered from lack of appropriate medical treatment over several

years.    By Opinion and Order entered January 23, 2023, in Case No.
7:22CV00428, ECF No. 17, the court severed certain of his claims into separate
civil actions.[1]  This case involves the claim that certain of the defendants failed to
provide Makdessi with medically appropriate shoes and a back brace.  After review
of the record, I conclude that the defendants' separate motions to dismiss must be
granted, and Makdessi's summary judgment motion must be denied, along with his
request for interlocutory injunctive relief.

## I. BACKGROUND.

The Eighth Amendment claims alleged in this action arose while Makdessi
was confined in the Protective Custody Unit at Red Onion State Prison (Red
Onion), a prison facility operated by the Virginia Department of Corrections
(VDOC).  Years before that, in 1993, after Makdessi had back surgery related to an
injured disc, his neurosurgeon recommended providing him with "medical shoes
[and] back brace that did provide pain relief until [Makdessi] was imprisoned."
Compl. 8, ECF No. 1.  Makdessi alleges that the defendants have refused to
provide the treatments the neurosurgeon recommended in 1993, which has
allegedly caused him "torture" for the past five to eight years.  *Id.*  He also alleges
that defendant Collins told him many times over seven years, "We all seen the

---

[1]  Two claims concerning events that occurred in 2015 and early 2016 remained in
Case No. 7:22CV00428 and were eventually dismissed as untimely.

move NetFlx [sic] made about your crime, this is why you deserve to suffer." *Id.*[2]
As relief on this claim, Makdessi seeks monetary relief and a court order for the
medical shoes and back brace the surgeon recommended.  The defendants are Dr.
Fox, Nurse Bledsoe, Nurse Trent, and Leah Jessee (now Holbrook) (the medical
defendants); and Harold Clarke, David Robinson, Steve Herrick, Warden Kiser,
Warden White, Major King, D. Turner, L. Collins, and J. Dillman (the VDOC
defendants).

The medical defendants and the VDOC defendants have filed separate
motions seeking dismissal for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).
They argue that Makdessi does not allege personal actions undertaken by any of
the defendants that deprived him of his constitutionally protected rights.

Makdessi has filed a response to these motions that alleges a much more
detailed chronology of facts than the Complaint itself, supported by attached
documents as exhibits.  Makdessi's response alleges that while he was assigned to
the Protective Custody Unit (PCU) at River North Correctional Center (River
North), Dr. Dulaney examined his feet and ordered on October 21, 2014, that he
should be allowed to purchase and possess size "9 ½ 4E wide medical boots or
shoes."  Resp. 1, ECF No. 37.  Makdessi alleges that Dr. Dulaney based his

---

[2] Makdessi was convicted for the 1996 first-degree murders of his wife and his
wife's co-worker and sentenced to two life sentences.  *Makdessi v. Watson,* 682 F. Supp.
2d 633 (E.D. Va. 2010) (denying habeas petition), *appeal dismissed*, 415 F. App'x 483
(4th Cir. 2011) (unpublished), *cert. denied*, 132 S. Ct. 202 (2011).

opinion on the recommendation of the neurosurgeon in 1993 that shoes in that size with "high soft soles" would provide pain relief for Makdessi. *Id.* Based on Dr. Dulaney's order, Makdessi purchased "9 ½ 4E wide New Balance medical shoes with strings." *Id.*

On March 17, 2015, the VDOC moved the PCU and Makdessi to Red Onion. Officers confiscated Makdessi's shoes because Red Onion does not allow shoes with strings. Makdessi protested and exhausted administrative remedies. He alleges that "[a]ll the named defendants kept refusing [his] medical needs" for the shoes and back brace "for 8 years." *Id.* at 2. Makdessi states that on March 25, 2019, a neurosurgeon recommended that Makdessi "should have the back brace [and] medical shoes with high soles which are soft to provide pain relief." *Id.* According to Makdessi, every time he had sick call with the medical department at Red Onion, he was "refused prescription of medical shoes [and] back brace, by Dr. Fox, Nurse Holbrook, Nurse Bledsoe, [and] Trent]." *Id.* He also asserts that "all" the defendants "lied" to him, by telling him that he would "need to sign another special order form." *Id.* He alleges that medical staff completed the form and had it signed by Kiser and Tate on April 23, 2019, and on another occasion, had another completed form signed on July 9, 2021, by Fuller and Turner. When the commissary staff received these forms, they responded that a special order of that type needed "to go through the medical department." *Id.*

Makdessi contends that "all the defendants are playing games" with him and have been for eight years. *Id.* He states that the commissary has refused his orders many times, and all the defendants have been notified of these refusals through written and verbal complaints. Yet, he complains, none of the defendants has ensured that while at Red Onion, he could order the shoes and back brace recommended by his medical providers in 1993, 2014, and 2019. Rather, he asserts the defendants have "LIED [and] fraudulently refused" his many grievances on the issue. *Id.* at 3.

On May 10, 2022, Nurse Trent allegedly offered Makdessi regular prison shoes, size 9. Makdessi said that he could not fit into them and would file a lawsuit. He filed his lawsuit on January 23, 2023, and notified all defendants that he was suing to get the shoes and back brace that would relieve his back and foot pain. Thereafter, Trent provided Makdessi with "medical shoes 9 ½ 4E wide with soft high soles," and they "did provide relief" of the inmate's back and foot pain. *Id.* at 4. Makdessi received these shoes on March 23, 2023, shortly before the court accomplished service on the defendants. He complains, however, that "the back brace is still being refused." *Id.*

Makdessi has also filed a document seeking to convert his response to the Motions to Dismiss and its attached exhibits into a summary judgment motion. Both groups of defendants have responded, arguing that Makdessi's submissions

do not meet the summary judgment standard under Rule 56 of the Federal Rules of Civil Procedure.

In January 2024, Makdess submitted a verified document that he titled as a "Motion for Emergincy Injuncion [sic]," asking the court to order VDOC officials to provide him with "medical shoes [and] back brace."  Mot. 1, ECF No. 44.  He complains that after nearly ten months of wearing his special wide shoes, the shoes have started to fall apart, and his feet continue to swell.  When he wrote to Nurse Trent about this problem, Trent responded:

> Medical is NOT responsible for ordering shoes, you can request the size shoes you need through laundry, we just advocated to get you shoes from D.O.C. laundry on 3-27-23 & you got them.

*Id.*  Makdessi interprets this response as somehow demonstrating that the medical and VDOC defendants have "conspired & DECEIVED" him into signing "fraudulent papers" to get what he thought were "medical" shoes, when they were, in fact, not medical at all.  *Id.*  Now, Makdessi asserts that he needs "5E wide 9 ½ medical shoes and back brace according to the neurosurg[e]on's recommendations" from 1993, because he is in pain and his feet are deteriorating. *Id.* at 2.

## II. DISCUSSION.

"A Rule 12(b)(6) motion to dismiss tests only 'the sufficiency of a complaint.'" *Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[3] In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* "[T]he court need not accept legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements." *Langford*, 62 F.4th at 124.

"[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017). While I must liberally construe a pro se litigant's pleadings, I cannot

---

[3] I have omitted internal quotation marks, alterations, and/or citations throughout this Opinion, unless otherwise noted.

construct constitutional claims for him based on conclusory statements without supporting factual matter. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of pro se complaints are not . . . without limits," and a reviewing court "cannot be expected to construct full blown claims from sentence fragments"); *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) ("A pro se plaintiff still must allege facts that state a cause of action.").

Makdessi presented his claims in this case as violating the Eighth Amendment and sued under § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). In his response to the defendants' motions, Makdessi mentions the ADA, which likely refers to the Americans with Disabilities Act. He cannot use his response to the defendants' motion to amend his claims to add an asserted violation of the ADA. *Cloaninger ex rel. Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009). Rather, such a change to his operative pleading should come through a formal amendment to the Complaint, which Makdessi has not submitted.

Therefore, I do not find that Makdessi has placed any claim under the ADA properly before this court, and I will not consider any such claim.[4]

Makdessi's claims about being unable to obtain special shoes and a back brace arise under the Eighth Amendment as applied to the states under the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976). A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id*. at 104. "A deliberate indifference claim consists of two components, objective and subjective." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

First, the plaintiff must prove that, objectively, his medical condition was sufficiently "serious." *Id*. For purposes of a constitutional claim, a condition that qualifies as objectively serious is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko ex rel. Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Second, the plaintiff must prove that, subjectively, the defendant was deliberately indifferent to the plaintiff's serious medical need. An official is

---

[4] In his time in prison, Makdessi has filed numerous pro se actions and pleadings concerning either his sentence or his treatment in prison. While certainly that is no reason to refuse relief, it does indicate that Makdessi is experienced in court procedures, even if he is not legally trained.

deliberately indifferent only when he or she "knows of and disregards an excessive risk to inmate health or safety. . . . That is a higher standard for culpability than mere negligence," such that "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* Put another way, the defendant must have known the plaintiff was "suffering from a condition which pose[d] a risk to the prisoner such that it would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (unpublished). Furthermore, to be unconstitutional, a defendant's conduct must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier ex rel. Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds* by *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Finally,

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*,  at 105–06.

I have liberally construed Makdessi's submissions jointly as a statement of his claims and supporting evidence, including his response to the defendants' motions and its attachments, which I have reviewed.  Even taking all these submissions in the aggregate, Makdessi as failed to allege any facts to show that a doctor who has served as his treating physician at River North or at Red Onion, has prescribed medical shoes or a back brace as medically necessary treatment for his back and foot pain.  *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977) (holding constitutional right to medical treatment "is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable").

More importantly, Makdessi has not alleged facts or presented any documents showing that any defendant knew certain shoes and/or a back brace were medically necessary to address Makdessi's pain.  Rather, his documentation shows that the medical defendants apparently attempted to help him obtain wider shoes to ease his purported foot pain.  They filled out forms or otherwise advocated for him to be allowed to order the footwear that he claimed his surgeon had recommended in 1993 — size 9 ½ 4E width with a high soft sole.  Makdessi provides no evidence that these defendants had a stock of shoes meeting this

description that they could simply hand out to him.  The fact that sometimes their efforts may not have satisfied the paperwork requirements for the commissary does not prove that they refused to assist or knowingly blocked Makdessi's efforts to obtain shoes that relieved his pain.  Indeed, Makdess's conclusory assertions that the defendants refused all his requests or conspired to deny him the desired medical items is simply unsupported by factual allegations.  Therefore, these speculative accusations need not be accepted as true in my determination of whether Makdessi has stated a claim against any defendant upon which relief can be granted.  *Langford*, 62 F.4th at 124.

As to VDOC defendants who are not identified as having any medical expertise, Makdessi's deliberate indifference claims fail for another reason.  He contends that they knew from grievances, letters or other documents he provided to them that he had not received so-called medical shoes or a back brace that doctors outside the VDOC had recommended for him.  When a prisoner is under the care of prison medical personnel, however, non-medical officials may rely on the judgment of prison medical staff as to the prisoner's serious medical needs and appropriate treatment.  *Miltier*, 896 F.2d at 854 (holding that non-medical personnel are entitled to rely on the professional judgment of medical practitioners to determine appropriate treatment for a patient); *Iko*, 535 F.3d at 242 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)) (reasoning that "'[i]f a prisoner

is under the care of medical experts . . ., a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands'") Simply put, nontreatment staff "cannot be liable for the medical staff's diagnostic decisions" and "cannot substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

For these reasons, I conclude that even liberally construing Makdessi's submissions in this case, jointly, as a statement of his allegations, he has failed to state factual support for the elements of an Eighth Amendment claim against any of the defendants. Therefore, I will grant the defendants' motions to dismiss. Because I conclude that Makdessi's allegations fail to state a claim upon which relief could be granted, I also conclude that he has not presented undisputed facts on which he is entitled to summary judgment as a matter of law. Accordingly, I will deny Makdessi's summary judgment motion.

## III. TEMPORARY INJUNCTION.

Finally, I must also deny Makdessi's motion for interlocutory injunctive relief seeking a court order to obtain "medical shoes and back brace." Mot. 1, ECF. No. 44. Documentation he himself submits indicates that the past recommendations for shoes to address his pain merely specified the size, width, and sole type, without any indication that they should be classified as medical or suppled through a medical equipment company. Moreover, in the weeks after

Makdessi received the desired shoes in March 2023, he admitted that they met his needs and relieved his pain.  After Trent later told him that he could order through the laundry department whatever size shoes would fit his feet, Makdessi concocted a conspiracy.  He speculates that the defendants, collectively, have duped him into believing that the shoes they helped him obtain were "medical," when they were just shoes with the specifications recommended by his providers in the past.  Furthermore, Makdessi now states that he requires shoes that are 5E in width and a back brace.  However, he offers no evidence whatsoever that any medical provider has prescribed these items as medically necessary for any condition from which he suffers.

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit."  *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).  A party seeking a preliminary injunction must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Each of these four factors must be satisfied.  *Id.*

Makdessi's motion does not show any likelihood of irreparable harm in the absence of the requested court intervention.  His motion merely states that he

wants a court order directing prison officials to provide him with the shoes and back brace recommended years ago for the conditions he was then experiencing. He does not submit evidence showing that any medical professional has recently prescribed these items for his current medical condition, or made a finding that the absence of these items will cause aggravation of his condition.  In short, Makdessi has shown neither substantial likelihood of success on the merits of his underlying deliberate indifference claims, nor that he will suffer irreparable harm in the absence of a court order.  In fact, the evidence he has supplied to the court indicates that even without medical assistance, he can order shoes in the size and width that will address his footwear needs.  And he does not provide any evidence that a medical provider at Red Onion has prescribed a back brace for him or that he will suffer irreparable harm without court intervention.  Without specific details about these facets of the *Winter* test, Makdess does not qualify for the extraordinary relief he seeks.  Therefore, I will deny his motion for interlocutory injunctive relief.

## IV.  CONCLUSION.

For the reasons stated, it is hereby **ORDERED** that the defendants' Motions to Dismiss, ECF Nos. 24 and 34, are GRANTED; and the plaintiff's Motion for Summary Judgment, ECF No. 41, and motion seeking interlocutory relief, ECF No. 44, are DENIED.

A separate Judgment will be entered on behalf of the defendants.

ENTER:  March 27, 2024

/s/  JAMES P. JONES
Senior United States District Judge